JUDGE STEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 14 CV 3593

-------------------------------------------------------------- X

THE NEW YORK TIMES COMPANY and
CHARLIE SAVAGE,

                        Plaintiffs,

              - against -

UNITED STATES DEPARTMENT OF
DEFENSE,

                     Defendant.

-------------------------------------------------------------- X

RECEIVED
MAY 20 2014
U.S.D.C. S.D. N.Y.

**COMPLAINT**

Plaintiffs THE NEW YORK TIMES COMPANY and CHARLIE SAVAGE, by their undersigned attorneys, allege for their Complaint:

    1.    This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to order the production of agency records improperly withheld by Defendant United States Department of Defense ("DOD") in response to a request properly made by Plaintiffs The New York Times Company and Charlie Savage (collectively "The Times").

## PARTIES

    2.    Plaintiff The New York Times Company publishes The New York Times newspaper. The New York Times Company is headquartered in this judicial district at 620 Eighth Avenue, New York, New York.

    3.    Plaintiff Charlie Savage is a reporter for The New York Times.

    4.    Defendant DOD is an agency of the federal government that has possession and control of the records that Plaintiffs seek.

1

57627

## JURISDICTION AND VENUE

5.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

6.   Venue is premised on the place of business of Plaintiffs and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

7.   Plaintiffs have exhausted all administrative remedies available in regards to the Request.  DOD failed to respond to the Request within the time frames set by FOIA, and therefore Plaintiffs are deemed to have exhausted all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

## FACTS

8.   Defendant the DOD is a federal agency charged with coordinating and supervising all functions of the military, including the Army, Navy and Air Force.  The DOD oversees operations, facilities, and tribunals at military bases, including those at U.S. Naval Station in Guantanamo Bay, Cuba.

9.   Guantanamo Bay Naval Base includes a United States military prison ("Guantanamo" or "Gitmo" or "GTMO"), which since 2002 has been used to detain, interrogate, and prosecute prisoners captured as part of the war against Al Qaeda and its allies.

10.   The naval base includes a limited medical facility for diagnosing and treating detainees.  It also includes a limited hospital for diagnosing and treating base personnel. When American troops, family members, and support staff encounter more serious health problems than the base medical facilities are equipped to handle, they are stabilized and then flown to the United States for treatment at a facility with advanced equipment and specialized doctors.

2

57627

11.     Congress has enacted a series of restrictions on the executive branch's ability to transfer detainees out of Guantanamo, including a statutory ban on bringing them into the United States for medical emergencies.

12.     In April 2013, a medical commander at the Guantanamo medical facility for detainees, answering questions from visiting reporters, said the facility lacked a variety of advanced health care equipment and medical devices.   She said she presently could not, for example, perform radiation therapy or kidney dialysis on a detainee, should the need arise.  *See* Charlie Savage, *Despair Drives Guantanamo Detainees to Revolt*, N.Y. TIMES, April 25, 2013, at A1.

13.     The DOD supervises the detainee operations and has previously released various rules governing the military proceedings at Guantanamo.

14.     The United States Southern Command ("SOUTHCOM") is one of nine Unified Combatant Commands ("UCC") in the DOD.  It is responsible for providing contingency planning and operations in Central and South America, the Caribbean, and their territorial waters, including Guantanamo.  SOUTHCOM through the Joint Task Force Guantanamo Bay conducts detention, interrogation, and other detainee operations at Guantanamo.

15.     Through this action, Plaintiffs seeks documents setting forth the legal advice given by DOD legal counsel to SOUTHCOM for providing care to Guantanamo detainees who have serious health issues and require attention that is beyond the scope of the Guantanamo base medical facilities.

16.     On March 20, 2013, General John F. Kelly, United States Marine Corps Commander, SOUTHCOM, testified before the House Armed Services Committee.

3

17.     At the hearing, committee member, Congressman Adam Smith, raised the issue of the restrictions Congress had placed on the executive branch's ability to move detainees out of Guantanamo in light of the potential that one could encounter a serious health problem beyond the scope of what the medical facilities there could handle.

18.     Congressman Smith stated: "There are some very severe long-term implications of what's going on down there.  We have I think it's 166 inmates down there now.  They're aging, as we all are, and there are certain − there's a certain lack of support facilities in that general area.  And if we're planning on keeping them there forever, there's an enormous amount of expense in terms of both caring for the inmates and then also dealing with our staff down there that has to do that.  You know, I think medical care is one of the biggest concerns.  There are not, you know, first-class facilities down there.  And as the law stands now and we have an inmate who has a heart attack, doesn't die, but needs more complicated care, where's he going to get it in Guantanamo?  He's not.  And that opens up all kinds of implications in terms of human rights violations and problems that we would have with our own laws, as well as with international laws.  And, you know, Miami may be two or three hours away, but under the law right now, we can't take them there. . . ."

19.     Congressman Smith asked General Kelly to address these concerns and discuss what the military needed to have built at Guantanamo if the prison were going to stay open indefinitely without the necessary medical facilities.

20.     In response, General Kelly, referring to a private conversation the two had evidently had on the same topic, stated: "Congressman, we briefly discussed this yesterday.  I'm with you, by the way, on the medical care.  I've gotten some legal opinion from the general counsel of DOD who, who has advised me on what our, not necessarily our public affairs

4

position is relative to . . . one of them having, say, a heart attack and we stabilize him there on island but can't move him off to a higher level of care . . . so that is a concern. But I'm told legally, as long as they have access to all of the medical care that's available on island – on island – which is – it's considerable. There's a naval hospital there, but it's kind of a small – it would be like a small-town hospital. It doesn't have a higher level of care for, say, cancer treatment or kidney treatment or something like that. But, in any event, I have dealt – worked with the general counsels on this issue and feel as though, at least the advice they've given me, is we're within the law so long as they have access and immediate access to any and all medical care on island. And they, of course, have that."

21.     Following General Kelly's testimony, in a FOIA request (the "Request") to SOUTHCOM, dated April 3, 2013, Mr. Savage sought all documents "containing or related to the legal advice provided by DOD to Southcom with regard to legal policy options if a Guantanamo detainee were to have a serious health issue that is beyond the scope of the Gitmo base medical facilities to address, in light of the restrictions on transferring detainees."

22.     On April 12, 2013, SOUTHCOM provided an interim response, which notified Mr. Savage that the agency would be unable to respond to the FOIA request within the 20-day statutory time period.

23.     In the interim response, SOUTHCOM stated that the delay was because of unusual circumstances including: (1) the need to search for and collect records geographically separate from the main office; (2) the potential volume of the responsive records; and (3) the need for consultation with one or more other agencies or DOD components

24.     The interim response also denied Mr. Savage's request for expedited processing.

57627

25.     No documents have been produced in respect to the Request.

## COUNT

26.     Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

27.     DOD is an agency subject to FOIA, 5 U.S.C. § 552(f), and must therefore release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

28.     Under 5 U.S.C. § 552(a)(6)(A), DOD was required to provide documents or issue a denial within 20 business days of receiving the Request.

29.     Under 5 U.S.C. § 552(a)(6)(C), a person making a request for materials under FOIA "shall be deemed to have exhausted his administrative remedies with respect to such a request if the agency fails to comply with the applicable time limit provisions" of FOIA.

30.     Accordingly, Mr. Savage is deemed to have exhausted his administrative remedies as to the Request.

31.     DOD has asserted no lawful basis under FOIA for withholding documents asked for by the Request.

32.     DOD's failure to provide responsive documents violates FOIA.

33.     Accordingly, The Times is entitled to an order compelling the DOD to undertake an adequate search of its records and produce any responsive documents.

57627

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.  Declare that the documents sought by the Request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and 5 U.S.C. § 552(a) and must be disclosed;

b.  Order the DOD to undertake an adequate search for the requested records and provide those records to Plaintiffs within 20 business days of the Court's order;

c.  Award Plaintiffs the costs of this proceeding, including reasonable attorney's fees, as expressly permitted by FOIA; and

d.  Grant Plaintiffs such other and further relief as this Court deems just and proper.

Dated: New York, New York
       May 19, 2014

David E. McCraw, Esq.
D. Victoria Baranetsky, Esq.
Legal Department
The New York Times Company
620 8th Avenue, 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccraw@nytimes.com
*Counsel for Plaintiffs*

7

57627